**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DIAMOND SPORTS GROUP, LLC, *et al.*,[1] | ) | Case No. 23-90116 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| DIAMOND SPORTS GROUP, LLC and DIAMOND SPORTS NET, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 23-03134 |
| | ) | |
| SINCLAIR BROADCAST GROUP, INC., SINCLAIR TELEVISION GROUP, INC., DIAMOND SPORTS TOPCO LLC, DIAMOND SPORTS INTERMEDIATE HOLDINGS LLC, DIAMOND SPORTS INTERMEDIATE HOLDINGS A LLC, DIAMOND SPORTS HOLDINGS LLC, DAVID SMITH, CHRISTOPHER RIPLEY, LUCY RUTISHAUSER, SCOTT SHAPIRO, BALLY'S CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DIAMOND SPORTS GROUP, LLC, *ET AL.*, FOR ENTRY OF AN ORDER (I) CLARIFYING THAT THE COMMITTEE HAS INTERVENED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24 AND BANKRUPTCY RULE 7024 OR (II) IN THE ALTERNATIVE, PERMITTING INTERVENTION**

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/DSG. The Debtors' service address for purposes of these chapter 11 cases is: c/o Diamond Sports Group, LLC, 3003 Exposition Blvd., Santa Monica, CA 90404.

> **This motion seeks an order that may adversely affect you.  If you oppose the motion, you should immediately contact the moving party to resolve the dispute.  If you and the moving party cannot agree, you must file a response and send a copy to the moving party.  You must file and serve your response within 21 days of the date this was served on you.  Your response must state why the motion should not be granted.  If you do not file a timely response, the relief may be granted without further notice to you.  If you oppose the motion and have not reached an agreement, you must attend the hearing.  Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing.  Represented parties should act through their attorney.**

The Official Committee of Unsecured Creditors (the "Committee") of Diamond Sports Group, LLC, *et al.* (collectively, the "Debtors"), by and through its undersigned counsel, files this motion (the "Motion") seeking an entry of an order (i) clarifying that the *Stipulation and Agreed Order Authorizing Intervention by the Official Committee of Unsecured Creditors* [Docket No. 18] ("Intervention Order") entered by the Court on August 8, 2023 approving the Committee's intervention in the above-captioned adversary proceeding (the "Sinclair Adversary Proceeding") applies in all respects and against each of the defendants thereto, or (ii) in the alternative, granting the Committee leave to intervene in the Sinclair Adversary Proceeding pursuant to section 1109(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 24 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable hereto by Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), on the terms set forth in the Intervention Order.  In support of this Motion, the Committee respectfully represents as follows:

## **PRELIMINARY STATEMENT**[2]

1.      Distinct from the Debtors, the Committee is the fiduciary for all the unsecured creditors of the Debtors' estates, rather than for the estates generally.  As such, the Committee's fundamental goal is to represent the interests of, and maximize recoveries for, the Debtors'

---

[2]    Capitalized terms not defined in this Preliminary Statement are defined later in this Motion.

unsecured creditors.  The claims asserted by the Plaintiffs in the Sinclair Adversary Proceeding—seeking over $1 billion in damages and other relief—likely represent the primary source of recovery for unsecured creditors.  It is thus not only appropriate, but necessary, for the Committee to intervene to acquit its fiduciary duties and protect the interests of its constituents.

2.     Recognizing the importance of the Committee's involvement on behalf of unsecured creditors, the Committee and the Debtors engaged in extensive negotiations regarding the terms by which the Committee would participate in the Sinclair Adversary Proceeding.  Those discussions culminated in the Intervention Stipulation, which was filed on the very same day as the Sinclair Adversary Complaint.  As described further herein, the Intervention Stipulation sets forth a host of specific conditions (the "Conditions") that enable the Committee to cooperate with the Debtors in their pursuit of the Sinclair Adversary Complaint while avoiding duplication of efforts, unnecessary expense, or delay.  The Court so-ordered the Intervention Stipulation approximately three weeks after it was filed, and in the absence of any response from the Defendants.

3.     By the express terms of the Intervention Order, the Court has *already* permitted the Committee to intervene in the Sinclair Adversary Proceeding as an intervenor-plaintiff, subject to the Conditions set forth therein.  These Conditions were modeled upon, and in many instances are more onerous than, restrictions placed on creditors' committees seeking to intervene in adversary proceedings in other chapter 11 cases in the Southern District of Texas.  The Conditions are also consistent with the way the Debtors and the Committee have operated prior to the filing of the Sinclair Adversary Complaint and in connection with the Debtors' Rule 2004 Investigation: in a highly coordinated and efficient manner, and without any unnecessary duplication, delay, or expense.  This effective coordination was recently lauded by Debtors' counsel, who noted the "hard

work and effort" and "input" of the Committee in "helping [the Debtors] to bring [the Sinclair Adversary Complaint] forward." Aug. 11, 2023 Hr'g Tr. 9:19-24. As an intervenor-plaintiff in the Sinclair Adversary Proceeding, the Committee intends to continue acting in this manner in furtherance of its fiduciary duties to the Debtors' unsecured creditors.

4.       The Committee believes it has already been permitted to intervene as a plaintiff in this action, notwithstanding that the Intervention Order reflects the intervention terms agreed upon by only the Committee and Debtors.  The Committee has repeatedly sought the Defendants' consent to its intervention on the terms reflected in the Intervention Stipulation.  But, in the nearly two months since the Intervention Stipulation was filed, the Defendants have neither consented to nor filed any objection to the Committee's proposed intervention.  While the Committee believes that the Intervention Order already made the Committee's intervention effective, to the extent a second intervention order is necessary in light of the Defendants' current position, the Committee requests that the Court (again) enter an order permitting the Committee to intervene in the Sinclair Adversary Proceeding, on the same Conditions as those set forth in the Intervention Order,  to ensure that the interests of the Debtors' unsecured creditors are properly protected.  The Committee meets the applicable standards for both mandatory and permissive intervention under Federal Rule 24.

5.       As described in greater detail below, the Committee satisfies the standard for mandatory intervention under Federal Rule 24(a)(2) because: (i) its application is timely; (ii) it has an interest in the claims (and potential recoveries) asserted in the Sinclair Adversary Proceeding; (iii) it would be impeded from representing its constituents' interests if not permitted to intervene; and (iv) while the Committee's and the Plaintiffs' positions largely align, there may be critical

instances in which those interests diverge, in which case the Plaintiffs would be unable to adequately represent the Committee's interests.

6.      The Committee also satisfies the permissive intervention standards under Federal Rule 24(b) because: (i) the Committee and Plaintiffs are closely aligned in their legal positions and understanding of the operative facts; (ii) the case is just beginning; and (iii) there would be no unfair prejudice to the Defendants as a result of the Committee's intervention.  The Committee therefore contends that, even if the Court finds that the standard for mandatory intervention is not satisfied, the Committee should nonetheless be permitted to intervene on the terms set forth in the Intervention Order.

## RELIEF REQUESTED

7.      By this Motion, the Committee requests entry of an order, substantially in the form attached hereto (the "Proposed Order"), clarifying that the Intervention Order has already ordered the Committee's intervention in the Sinclair Adversary Proceeding, pursuant to Bankruptcy Code section 1109(b) and Federal Rule 24 (made applicable herein by Bankruptcy Rule 7024).  In the alternative, the Committee requests the entry of an order authorizing it to intervene in the Sinclair Adversary Proceeding on the terms set forth in the Intervention Order.

## BACKGROUND

### I.      Formation of the Committee

8.      On March 14 and 15, 2023, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Court.

9.      On March 27, 2023, the United States Trustee for the Southern District of Texas appointed the Committee pursuant to Bankruptcy Code section 1102 [Docket. No. 247].  The Committee is currently comprised of the following members: (i) Harte-Hanks Response

Management/Austin, Inc.; (ii) Intelsat US LLC; (iii) U.S. Bank Trust Company, National Association, as indenture trustee; and (iv) VITAC Corporation.

## II.     The Debtors and the Committee Jointly Engage in Rule 2004 Discovery and an Investigation of Claims Giving Rise to the Sinclair Adversary Complaint

10.     Immediately after its formation and retention of professionals, the Committee launched an investigation into the Debtors' prepetition transactions and began engaging in both informal and formal discovery of the Debtors and various third parties, including Sinclair (as defined herein).  The Committee recognized from the outset of its investigation that the Debtors' own investigation into prepetition transactions was already well underway.  As such, rather than recreate previously undertaken efforts, the Committee's legal and financial professionals instead worked closely with the Debtors on a common interest basis to understand, rather than duplicate, the Debtors' extensive investigative efforts.

11.     As the Debtors' efforts developed into an investigation pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Investigation"), the Committee endeavored to preserve estate resources by cooperating and working with the Debtors on discovery sought from Sinclair and other third parties, specifically to *avoid* duplication of efforts, unnecessary expense, or delay. As it pertains to document discovery, the Committee largely limited the scope of its follow-up requests to issues unique to the interests of unsecured creditors.  Further, the Committee worked in concert with the Debtors to identify appropriate deponents in the Rule 2004 Investigation and did not notice *any* additional depositions on its own.  The conduct of those depositions similarly reflected the high degree of cooperation between the Committee and the Debtors behind the scenes and resulted in no duplication.

12.     During the Rule 2004 Investigation, the Defendants never objected to the Committee's participation in any discovery efforts, nor complained of any duplication of efforts (because there was none).

### III.     The Plaintiffs Commence the Sinclair Adversary Proceeding

13.     On July 19, 2023, following months of Rule 2004 discovery, Debtors Diamond Sports Group, LLC and Diamond Sports Net, LLC (together, the "Plaintiffs") filed an adversary complaint (the "Sinclair Adversary Complaint") against Sinclair Broadcast Group, Inc. ("Sinclair"), various Sinclair affiliates, several officers and directors of Sinclair (collectively, the "Sinclair Defendants"), and Bally's Corporation ("Bally's" and together with the Sinclair Defendants, the "Defendants") to institute the Sinclair Adversary Proceeding. The Sinclair Adversary Complaint asserts nineteen different counts, including to avoid multiple transactions with and transfers to the Defendants, and seeks to recover in excess of $1 billion in damages. Illustrative of the Debtors' and the Committee's coordination efforts, the Sinclair Adversary Complaint reflects the Committee's input and analysis of the underlying causes of action as well as multiple rounds of comments.

14.     Indeed, as counsel for the Debtors recently noted to the Court, the Sinclair Adversary Proceeding "is a significant litigation which required a lot of hard work and effort that was also shared with the Creditors Committee, and their input is reflected in those claims, and they were very helpful, to be quite candid, in terms of helping us to bring that complaint forward; and that obviously is a significant asset of the estate as well." Aug. 11, 2023 Hr'g Tr. 9:19-24.

15.     Since the filing of the Sinclair Adversary Complaint, the Committee has continued that coordinated work in the Sinclair Adversary Proceeding, in accordance with the Conditions set forth in the Intervention Order. As with the investigation, the Committee has not served any

independent discovery on the Defendants to date, and instead has coordinated closely with the Debtors to provide its input and perspective on the discovery sought.  The Committee intends to continue acting in this manner.

### IV.    The Court Enters the Intervention Order

16.    Prior to the filing of the Sinclair Adversary Complaint, the Committee and the Debtors engaged in extensive discussions surrounding the Committee's intervention in the Sinclair Adversary Proceeding.  These discussions, which involved the potential conditions and scope of the Committee's intervention, culminated in the filing of the *Stipulation and [proposed] Agreed Order Authorizing Intervention by the Official Committee of Unsecured Creditors* [Docket No. 4] (the "<u>Intervention Stipulation</u>") on the same day as the filing of the Sinclair Adversary Complaint.

17.    On August 8, 2023, the Court entered the Intervention Order, which provides, among other things, that the Committee "shall be, and hereby is, permitted to intervene in the Adversary Proceeding as an intervenor-plaintiff under Bankruptcy Rule 7024 without the need for the filing of a motion and shall be deemed to have joined in the pending Complaint…." Intervention Order ¶ 1.

18.    Thus, by the express terms of the Intervention Order, the Court has already permitted the Committee to intervene in the Sinclair Adversary Proceeding as an intervenor-plaintiff, subject to the Conditions, which require that the Committee, among other things:

- provide the Debtors with 48 hours' notice before serving any deposition notices, subpoenas, or written discovery requests and, if the Debtors object, only serve such notices, subpoenas, or written discovery requests with Court approval upon motion by the Committee;

- use reasonable efforts to not duplicate the Debtors' deposition questions, discovery requests, or any witness examinations conducted by the Debtors at trial;

- only file dispositive motions independent of the Debtors with prior Court approval upon motion by the Committee (but the Committee may file non-dispositive briefing without such approval);

- not seek to independently resolve the claims in the Sinclair Adversary Proceeding absent prior written consent from the Plaintiffs or a Court order upon motion by the Committee (but the Committee is to be included in settlement negotiations with respect to any such claims); and

- not independently appeal any final judgment entered in the Sinclair Adversary Proceeding absent a Court order upon motion by the Committee (but the Committee shall be a party to any such appeal).

*See* Intervention Order ¶ 3.

19.     In short, the Intervention Order prescribes the terms by which the Committee will work cooperatively with the Debtors without duplicating efforts.  To date, none of the Defendants have filed any objections, responses, or otherwise sought relief with respect to the Intervention Stipulation (filed nearly two months ago) or Intervention Order (entered approximately one month ago).

**V.     Intervention Negotiations with the Defendants Break Down**

20.     On or about August 4, 2023, after the schedule governing the Sinclair Adversary Proceeding was agreed upon and before the Intervention Order was entered, counsel for the Committee contacted counsel for all Defendants and inquired whether Defendants would consent to the Committee's intervention on the terms set forth in the Intervention Stipulation.

21.     Since then, the Committee has repeatedly sought the Defendants' consent to its intervention on the terms reflected in the Intervention Stipulation.  But in the nearly two months since the Intervention Stipulation was filed, and more than one month after the Intervention Order was entered, the Defendants have neither consented to nor filed an objection to the Committee's proposed intervention on the terms reflected in the Intervention Stipulation.

22.     Following the Committee's most recent direct request for a definitive response on its intervention, counsel to the Defendants informed the Committee's counsel that they would not agree to the Committee's intervention on the terms set forth in the Intervention Stipulation and that

the Defendants did not believe it was necessary or proper for the Committee to intervene.  The Defendants' positions have necessitated the Committee filing this Motion.

## **ARGUMENT**

23.      In the first instance, the Committee seeks entry of an order clarifying that the Committee was already permitted to intervene in the Sinclair Adversary Proceeding on the terms set forth in the Intervention Order.  In the alternative, if the Court finds that the Intervention Order is not binding on the Defendants, the Committee requests that the Court enter a new order, which is binding on the Defendants, permitting the Committee to intervene in the Sinclair Adversary Proceeding on the same conditions set forth in the Intervention Order, for the reasons described herein.

24.      Under Bankruptcy Code section 1109(b), a "party in interest, including the debtor, the trustee, ***a creditors' committee***, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."  11 U.S.C. § 1109(b) (emphasis added).  In analyzing issues of intervention, courts in the Fifth Circuit read Bankruptcy Code section 1109 in conjunction with Bankruptcy Rule 7024 and look to its counterpart Federal Rule 24 for the applicable standard of review.  *See Fuel Oil Supply & Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283, 1286–87 (5th Cir. 1985).  Federal Rule 24 provides two mechanisms to seek intervention—(i) mandatory intervention; and (ii) permissive intervention.  *See* Fed. R. Civ. P. 24.  The Committee meets the relevant standards under both intervention methods and, thus, respectfully requests that it (again) be granted permission to intervene.

## I.      Intervention is Warranted Based on the Intervention Order

25.      The Committee seeks to intervene based on the terms of the Intervention Order, which were extensively negotiated with and ultimately agreed upon by the Debtors.  The terms set forth in the Intervention Order were specifically designed to accomplish two goals: (i) to avoid potential duplication of efforts; and (ii) to allow the Committee to represent the interests of the Debtors' unsecured creditors, which the Committee is uniquely positioned to do.

26.      The Committee believes the Intervention Order's terms, including the Conditions, are eminently reasonable.  They are also consistent with the terms upon which bankruptcy courts in the Southern District of Texas have regularly permitted intervention by creditors' committees.[3]

27.      In *iHeart*, for example, Judge Isgur granted a creditors' committee's unopposed intervention motion, but noted on the record that he "took … pretty seriously" the "promise" of the committee "not … to duplicate what the Debtor's doing" and "to monitor [the adversary proceeding] and … step into the breach if [the committee] think[s] … that's required." *iHeart* Apr. 14, 2018 Hr'g Tr. at 37:1-8 [Docket No. 69].

28.      In *Brazos*, Judge Jones permitted the creditors' committee to intervene as co-plaintiff in an adversary proceeding via stipulation.  Judge Jones also allowed certain individual creditors to intervene in that adversary proceeding pursuant to a stipulation that had been

---

[3]      *See Order Granting Motion of the Official Committee of Unsecured Creditors of iHeartMedia, Inc. et al. for Entry of an Order Pursuant to Federal Rule 24 and Bankruptcy Rule 7024 Permitting Intervention in Legacy Notes Adversary Proceeding*, entered in *Wilmington Savings Fund Society, FSB v. iHeart Communications, Inc., et al. (In re iHeartMedia, Inc.)*, Adv. Pro. No. 18-03052 (MI) (Bankr. S.D. Tex.) ("*iHeart*") [Docket No. 64] (the "*iHeart* Intervention Order"); *Stipulation and Agreed Order Authorizing Intervention [as to Brazos UCC]* entered in *Brazos Elec. Power Coop., Inc. v. Elec. Reliability Council of Tex., Inc. (In re Brazos Elec. Power Coop., Inc.)*, Adv. Pro. No. 21-03863 (DRJ) (Bankr. S.D. Tex.) ("*Brazos*") [Docket No. 20] (the "*Brazos* UCC Intervention Order"); *Stipulation and Agreed Order Authorizing Intervention [as to Co-op Members]* [Docket No. 136], entered in *Brazos* (the "*Brazos* Co-op Intervention Order"); *Order Granting Expedited Motion of the Official Committee of Unsecured Creditors of Wesco Aircraft Holdings, Inc. et al. for Entry of an Order Pursuant to Federal Rule of Civil Procedure 24 and Federal Rule of Bankruptcy Procedure 7024 Authorizing Intervention in Adversary Proceeding*, entered in *Wesco Aircraft Holdings, Inc., et al., v. SSD Investments Ltd, et al. (In re Wesco Aircraft Holdings, Inc.)*, Adv. Pro. No. 23-03091 (Bankr. S.D. Tex.) ("*Wesco*") [Docket No. 237] (the "*Wesco* Intervention Order").

negotiated at "arm's length" with the debtors, *Brazos* Oct. 18, 2021 Hr'g Tr. at 243:24-25-244:1-6 [Docket No. 131], subject to conditions very similar to the Conditions imposed by the Intervention Order here.  *See Brazos* Co-Op Intervention Order at 4-6.  In allowing those creditors to intervene, the judge directed that they work "in an efficient manner."  *Brazos* Oct. 18, 2021 Hr'g Tr. at 244:7-15.

29.     And just last week, Judge Jones again permitted a creditors' committee to intervene in a pending adversary proceeding in *Wesco* but provided that "[t]he Committee shall not propound any discovery requests in the Adversary Proceeding that are duplicative of the discovery requests the Committee already propounded in the bankruptcy case pursuant to Rule 2004." *Wesco* Intervention Order at 2.

30.     The Committee has heard and understands the concerns raised in these prior cases. Consistent with the guidance of Judge Isgur and Judge Jones, the Committee negotiated an arm's-length Intervention Stipulation with the Debtors, agreed to the Conditions, and committed that it will not duplicate the Debtors' efforts.  The Committee simply seeks a sufficient presence in the Sinclair Adversary Proceeding to protect the interests of unsecured creditors.

31.     The Defendants have indicated that they do not agree to the Committee's intervention or the Conditions, but they never filed an objection to the Intervention Stipulation in the nearly three weeks it was on file before it was signed by the Court, and they have not objected to or moved to strike the Intervention Order in the month since it was entered.  Nor have the Defendants formally objected to the participation of the Committee in the early stages of the Sinclair Adversary Proceeding, including in the discussions concerning the case schedule and discovery.

32.     Given: (i) the Court's entry of the Intervention Order; (ii) the Committee's actions to date showing highly effective and efficient coordination of efforts with the Debtors; and (iii) the Defendants' prior failure to raise any objections to either the Intervention Stipulation or Intervention Order, the Committee respectfully seeks an order clarifying that the Court has already approved the Committee's intervention in the Sinclair Adversary Proceeding pursuant to the Intervention Stipulation.

## II.     The Committee Satisfies the Criteria for Intervention Under the Federal Rules

33.     Notwithstanding the Committee's view that the Court has already approved its intervention in the Sinclair Adversary Proceeding, in light of the Defendants' unreasonable refusal to consent to the Committee's intervention, the Committee hereby moves, in the alternative, for intervention pursuant to Federal Rules 24(a)(2) and (b).

### A.     Mandatory Intervention is Warranted Under Federal Rule 24(a)(2)

34.     Federal Rule 24(a)(2) provides the right to intervene to any party that "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2). Courts find that a party has a right to intervene under Federal Rule 24(a)(2) where four elements are satisfied:

> (1) the application for intervention must be timely;
>
> (2) the applicant must have an interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; [and]
>
> (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*NextEra Energy Cap. Holdings, Inc. v. D'Andrea*, 2022 WL 17492273, at *2 (5th Cir. Dec. 7, 2022); *see Fuel Oil Supply & Terminaling*, 762 F.2d at 1287 (stating that under Federal Rule 24(a)(2), there is a "broad, legitimate right to appear and be heard that § 1109(b) grants to parties in interest"). The Committee satisfies all four of these criteria.

        *i.   The Committee's Motion is Timely*

35.     "The timeliness inquiry 'is contextual; absolute measures of timelines should be ignored.'" *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (internal citations omitted). Instead, whether a motion to intervene is timely "'is to be determined from all the circumstances.'" *Id.* (motion timely where proposed intervenor "sought intervention before discovery progressed and because it did not seek to delay or reconsider phases of the litigation that had already concluded."). Courts in the Fifth Circuit often look to four factors to assist with this determination:

> (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (motion to intervene made two months after issuance of preliminary injunction was timely). It is beyond meaningful dispute that the Committee's motion is timely in accordance with these factors.

36.     *First*, the Committee has acted without undue delay. The Sinclair Adversary Proceeding is in its infancy. The Plaintiffs filed the Sinclair Adversary Complaint less than two months ago, no responsive pleadings have been filed yet, and discovery is in its nascent stages. The Committee recognized its interest in the Sinclair Adversary Proceeding long before it was

commenced, and, on the same day the Sinclair Adversary Complaint was filed, the Committee filed the Intervention Stipulation, which reflects its agreement with the Debtors. Just two weeks later—after the Plaintiffs and Defendants agreed to a litigation schedule—the Committee asked Defendants to consent to the Committee's intervention subject to the Conditions set forth in the Intervention Stipulation.

37. Counsel to the Committee has since engaged in good faith discussions with Defendants' counsel regarding the Committee's proposed intervention, notwithstanding that the Court so-ordered the Intervention Stipulation on August 8, 2023. Nonetheless, it has become clear that the parties have reached an impasse: the Defendants indicated that they would oppose the Committee's intervention on the Conditions set forth in the Intervention Order. The Committee is filing this Motion just days later.

38. *Second*, since the Sinclair Adversary Proceeding has just begun—and because the Committee seeks a limited role already approved by the Court in the Intervention Order—there can be no legitimate argument that the Committee's intervention would cause unfair prejudice or delay. As the Committee has repeatedly made clear to Defendants, the Committee does not intend to duplicate the Debtors' efforts and will continue to minimize any additional burden associated with its participation in the Sinclair Adversary Proceeding.

39. *Third*, the Committee and the Debtors' estates, on the other hand, will suffer considerable prejudice if the Committee is not permitted to intervene. Immediately after the Committee was formed, the Committee joined the Debtors in an extensive investigation into various prepetition transactions that are the subject of the Sinclair Adversary Proceeding. The knowledge the Committee gained during that investigation is invaluable to effectively prosecuting

14

the claims asserted in the Sinclair Adversary Complaint and, ultimately, to maximizing potential recoveries for the Debtors estates and creditors.

40.     *Finally*, there are no unusual circumstances that weigh against a finding that this Motion is timely.

> ii.     *The Committee Has an Interest in the Property and Transactions that Are the Subject of the Action*

41.     The Committee has a substantial interest in the property and transactions at issue in the Sinclair Adversary Proceeding, which seeks to recover assets in excess of $1 billion that were transferred from the Debtors to Sinclair and other parties in connection with the unlawful transactions detailed in the Sinclair Adversary Complaint.

42.     The claims asserted in the Sinclair Adversary Proceeding likely represent the primary source of recovery for unsecured creditors.  *See McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("The general policy behind the assertion of avoidance actions is that the proceeds recovered should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors.").  As the fiduciary for all the Debtors' unsecured creditors, the Committee seeks to participate in the Sinclair Adversary Proceeding to ensure recoveries on these claims are maximized for the benefit of its constituents.  *See* Fed. R. Bankr. 1109; *Fuel Oil Supply & Terminaling*, 762 F.2d at 1287 (stating that it was Congress's intent that Rule 24(a)(2) apply "to applications to intervene in bankruptcy adversary proceedings under § 1109(b)" and that this application "allows any party in interest with a stake in the outcome of an adversary proceeding to intervene in that proceeding as of right"); *see also In re Royal Alice Properties, LLC*, 2020 WL 5552576, at *3 (Bankr. E.D. La. Sept. 16, 2020) (". . . courts have held that parties in interest are entitled to intervene in adversary proceedings upon request, solely as a consequence of their rights under § 1109(b) of the Bankruptcy Code.").

15

       *iii.*    *The Sinclair Adversary Proceeding May Impair or Impede the*
             *Committee's Ability to Protect its Interests*

43.     The Committee's ability to protect the interests of its constituents will necessarily

be impaired if the Committee is not permitted to intervene in the Sinclair Adversary Proceeding.

*See In re Smith*, 521 B.R. 767, 776 (Bankr. S.D. Tex. 2014) (finding that this requirement considers

whether the disposition of the action would "impair or impede" the potential intervenor's ability

to protect its interest in the matter).  Among other things, the claims asserted in the Sinclair

Adversary Complaint could potentially be settled, adjudicated, or otherwise resolved in a way that

adversely impacts the rights of unsecured creditors to the proceeds of such claims.

       *iv.*    *The Committee's Interests Are Not Adequately Protected by the*
             *Existing Parties*

44.     Finally, while the Committee is currently aligned with the Plaintiffs, intervention is

nonetheless necessary to ensure the interests of unsecured creditors are protected.  While the

Committee shares the Plaintiffs' objective of maximizing recoveries from the Defendants, the

Plaintiffs have competing interests that the Committee does not, and there may well be occasions

in the Sinclair Adversary Proceeding where these interests diverge.

45.     The Committee's burden on the inadequate protection prong is "minimal"; it "need

not show that the representation by existing parties will be, for certain, inadequate." *Brumfield v.*

*Dodd*, 749 F.3d 339, 345 (5th Cir. 2014) (internal quotations omitted) (prong satisfied even where

proposed intervenors' interests and a party's interests "may not align precisely").  When

considering whether a party seeking to intervene is adequately represented, courts compare the

"ultimate objectives" of the party seeking to intervene and existing parties.  *See City Bank v.*

*Compass Bank*, 2010 WL 1424275, at *7 (W.D. Tex. Apr. 6, 2010) (explaining that the "ultimate

objective" of a creditor is different from the goal of a trustee "to recover money on behalf of all

general creditors of the bankruptcy estates").  And, even where the ultimate objectives are the same, the court may find inadequate representation if the interests of the parties might diverge in the future.  *See Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2017 WL 6059303, at *6 (E.D. Tex. Dec. 7, 2017) ("The Court agrees that Walmart's interest in this suit may diverge from that of each individual proposed intervenor's interest, and, as a result, finds that Walmart may not adequately represent each proposed intervenor's interest."); *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 425 (5th Cir. 2002) ("That the FDIC's interests and Monogram's may diverge in the future, even though, at this moment, they appear to share common ground, is enough to meet the FDIC's burden on this issue [of inadequate representation].").

46.     Here, while the interests of the Debtors and the Committee currently are aligned, their interests may diverge at later stages of the litigation and during potential settlement negotiations.  In negotiating a potential settlement, for example, the Debtors' objectives might differ from those of the Committee; while the Debtors are understandably focused on reorganizing successfully and emerging from chapter 11 expeditiously, the Committee has a fiduciary obligation to maximize recoveries for unsecured creditors.  There might also be occasions where the Committee's position on legal issues or strategy that arise in the Sinclair Adversary Proceeding differs from that of the Debtors, such that the Committee deems it necessary to submit independent briefing.

47.     The Committee submits that it meets all the criteria for mandatory intervention under Federal Rule 24(a).  Should the Court agree, the Committee will continue to play a limited role in the Sinclair Adversary Proceeding.  As noted above, the Committee will abide by the Intervention Stipulation, including the Conditions—so-ordered by the Court—the terms of which

were designed to ensure that the Committee's participation is not duplicative or wasteful of estate resources.

**B.    Permissive Intervention is Warranted Under Federal Rule 24(b)**

48.    Permissive intervention under Federal Rule 24(b) is warranted here as well.  *See Fuel Oil Supply & Terminaling*, 762 F.2d at 1287 ("[P]ermissive intervention under Rule 24(b) is likewise a possibility."); *see also Sierra Club*, 18 F.3d at 1205 (noting that permissive intervention should generally be allowed where "no one would be hurt and greater justice could be attained.").

49.    Courts have discretion in deciding whether to allow intervention under Rule 24(b), which permits a party, upon timely motion, to intervene in an action when an applicant's claim or defense and the main action have a common question of law or fact.  Fed. R. Civ. P. 24(b); *see also In re Smith*, 521 B.R. at 778 ("Permissive intervention, however, 'is wholly discretionary' with the court." (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984))).

50.    Courts evaluating permissive intervention primarily consider whether common facts and legal issues exist between the active party and the proposed intervenor.  *See In re Today's Destiny, Inc.*, 2007 WL 2028111, at *2 (Bankr. S.D. Tex. July 6, 2007).  "Generally, the 'claim or defense' portion of Rule 24(b)(2) has been construed liberally."  *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006); *see also In re Today's Destiny, Inc.*, 2007 WL 2028111, at *2 ("[t]he 'claim or defense' portion of [Rule 24(b)] has been construed liberally, and indeed the Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation'" (citing *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)).  This liberal construction under Rule 24(b) is further supported by the "broad,

legitimate right to appear and be heard that § 1109(b) grants to parties in interest" in bankruptcy proceedings. *Fuel Oil Supply & Terminaling*, 762 F.2d at 1287.

51.     There are indisputably factual and legal issues common to the Committee and the Plaintiffs.  Indeed, the Committee seeks to adopt the Sinclair Adversary Complaint against the Defendants in its entirety in order to protect the interests of unsecured creditors in what may be a valuable source of recovery.  Like the Plaintiffs, the Committee has an interest in maximizing recoveries from the Defendants for the benefit of the Debtors' estates.  Further, the Committee believes that it may be of material assistance to the parties and the Court in connection with potential efforts to negotiate a consensual resolution of the Sinclair Adversary Proceeding.

52.     In determining whether intervention is appropriate under Federal Rule 24(b), courts also consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. *See In re Today's Destiny, Inc.*, 2007 WL 2028111, at *2.  Here, intervention at this early stage of the case will not cause *any* delay or prejudice the rights of *any* party.  The Sinclair Adversary Proceeding was filed less than two months ago, and the Committee's continued participation will be subject to the Conditions set forth in the Intervention Order (as incorporated in the proposed order annexed hereto).  The Committee will not serve duplicative discovery or unnecessarily take depositions independent of the Debtors.  In short, this action will continue to proceed at the same pace and in a similar manner as it would without the Committee's participation. *See In re Charter Co.*, 50 B.R. 57, 63 (Bankr. W.D. Tex. 1985) (permitting official committee of unsecured creditors to intervene and adopt a debtor's adversary complaint because it was early in the case and there would be no prejudice to the parties in the committee intervening as co-plaintiff to bring the same claims as the debtor); *see also Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, 2006 WL 2382250, at *6 (S.D. Tex. Aug. 16, 2006) (noting that intervention was

proper where the case was "at an early stage and intervention will neither delay the proceedings nor prejudice the existing parties").

53.     Additionally, the Conditions already imposed by the Intervention Order protect against the very concerns the Defendants have raised about the possibility of having to respond to and defend against duplicative discovery.  Indeed, the Intervention Order specifically provides that "each Party shall make reasonable efforts not to duplicate the noticing Party's examination" as to depositions, and "the Committee … shall not propound any Written Discovery Requests that are the same as or substantially similar to any Written Discovery Requests that the Debtors already have propounded or have agreed to propound."  Intervention Order ¶¶ 3(a), (b).  As for written submissions to the Court, the Intervention Order requires the Committee to "make reasonable efforts not to duplicate the Debtors' briefs, filings, and pleadings."  *Id.* ¶ 3(c).

54.     To be sure, the Committee will continue to act efficiently and as a proper estate fiduciary in the Sinclair Adversary Proceeding.  The Committee simply seeks to participate in the same manner in which it did throughout the Rule 2004 Investigation—without duplication, but to provide its perspective.  Any purported concerns about the *possibility* of having to respond to additional discovery or multiple briefs (like the Defendants would have to do in any multi-party litigation) are not a sufficient basis to prevent the Committee from intervening or to impose any limitations beyond the Conditions already agreed to by the Debtors and the Committee.

## **CONCLUSION**

**WHEREFORE**, the Committee respectfully requests that the Court enter an order substantially in the form annexed hereto: (i) clarifying that the Court has already approved the Committee's intervention in the Sinclair Adversary Proceeding pursuant to the Intervention Stipulation; or (ii) in the alternative, permitting the Committee to intervene on the terms of the

Intervention Stipulation; and (iii) granting such other and further relief as may be just, proper, and equitable.

Dated: September 11, 2023        Respectfully Submitted,

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Marty L. Brimmage, Jr.*

Marty L. Brimmage, Jr. (State Bar No. 00793386;
S.D. Tex. 30464)
2300 N. Field Street, Suite 1800
Dallas, TX 75201-2481
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: mbrimmage@akingump.com

-and-

Ira S. Dizengoff (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Naomi Moss (admitted *pro hac vice*)
One Bryant Park
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: idizengoff@akingump.com
Email: aqureshi@akingump.com
Email: nmoss@akingump.com

-and-

Scott L. Alberino (admitted *pro hac vice*)
2001 K Street N.W.
Washington, DC 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
Email: salberino@akingump.com

*Counsel to the Official Committee of Unsecured Creditors of Diamond Sports Group, LLC,* et al.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on September 11, 2023, I caused a true and correct copy of the foregoing to be served via email through the Court's Electronic Case Filing System on the parties that have consented to such service.

<u>*/s/ Marty L. Brimmage, Jr.*   </u>
Marty L. Brimmage, Jr.